**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| HELEN ANNETTE RODGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. CIV-18-398-RAW-KEW |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Helen Annette Rodgers (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 50 years old at the time of the decision. She has a high school education and worked in the past as a sandwich maker, cook helper, and food sales clerk. Claimant alleges an inability to work beginning on May 10, 2007, due to heart problems, fatigue, high blood pressure, stomach ulcers, mental illness, GERD, Raynaud's disease, and two hiatal hernias.

## Procedural History

On August 19, 2015, Claimant protectively filed applications for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's

applications were denied initially and upon reconsideration. On August 24, 2017, ALJ James Bentley conducted an administrative hearing in McAlester, Oklahoma, at which Claimant was present and testified. On November 15, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on October 18, 2018, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error because: (1) the RFC is erroneous; (2) the credibility findings are not supported by substantial evidence; (3) the ALJ failed to follow the law at step four of the analysis;(4) he failed to develop the vocational expert testimony and failed to follow the cross-examination testimony of the vocational expert; and (5) the decision was rendered by an ALJ whose appointment was invalid at the time he rendered the decision.

**RFC Determination**

In his decision, the ALJ found Claimant suffered from coronary artery disease (status post history of no-ST elevation myocardial infarction (NSTEMI) with stenting in 2007), hypertension, hyperlipidemia, diffuse degenerative changes of the lumbar spine with severe disc space narrowing at L5-S1, multilevel degenerative facet arthropathy of the cervical spine, and unspecified depressive disorder. (Tr. 14). He determined Claimant could perform light work with additional limitations. Claimant was unable to climb ladders, ropes, and scaffolding and must avoid concentrated exposure to dust, smoke, fumes, and poorly ventilated areas. She was to avoid unprotected heights and dangerous moving machinery. Claimant could understand, remember, and apply simple and detailed instructions and concentrate and persist for extended periods in order to successfully complete simple and detailed work tasks with routine supervision. (Tr. 19).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform her past relevant work as a food sales clerk, as it was actually and generally performed. (Tr. 25). He also determined Claimant could perform the representative jobs of ticket seller, office helper, and booth cashier, all of which he found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant was not under a disability from May 10, 2007, through the date of the decision. (Tr. 26).

Claimant contends the ALJ's RFC is unsupported by substantial evidence. Specifically, Claimant asserts the ALJ's RFC assessment represents "boilerplate" statements with no explanation as to how the ALJ arrived at his conclusions. She maintains that a proper review of the record would result in the conclusion that she cannot engage in substantial gainful activity for an entire eight-hour workday and five-day workweek, especially in light of the number of accommodations afforded to her by her current employer.

The ALJ discussed the record in detail in his decision. (Tr. 20-24). He noted Claimant alleged disability beginning on May 10, 2007, with treatment notes referencing a non-ST elevation myocardial infarction and stenting to the right coronary artery in 2007, but the earliest medical evidence in the record was dated September 6, 2013. (Tr. 21). The ALJ discussed Claimant's treatment records from the Choctaw Nation Healthcare Centers, and her treatment from cardiologist Kamlesh v. Bulchandani, M.D. (Tr. 21). He noted her referral to cardiologist Khalid Shafiq, M.D. in April of 2016, and Dr. Shafiq's recommendation that Claimant maximize medical therapy along with continued emphasis on risk factor modifications. The ALJ further discussed Claimant's records from July of 2016 and April of 2017, including an examination by Choctaw Nation cardiologist Gary D. Fine, D.O., who noted in April of 2017 that Claimant had done well since her 2007 right coronary artery stenting and was functioning very well. He determined Claimant no

6

longer needed to be on anti-thrombotic clopidogrel and required no therapy other than aggressive dietary measures and cholesterol management. As other physicians had in the past, Dr. Fine recommended Claimant completely stop smoking. (Tr. 22).

The ALJ also discussed Claimant's complaints of pain in her joints and muscles, noting degenerative changes in her lumbar and cervical spines. Claimant testified her pain was the main problem keeping her from working full-time. However, the ALJ noted Claimant received no treatment for her pain other than intermittently prescribed oral, non-narcotic pain medication, and he provided examples from the record showing that she rarely exhibited abnormal findings on musculoskeletal examination. (Tr. 22-23).

The ALJ discussed that Claimant had continued to work for nearly the entire time since her alleged onset of disability. (Tr. 23). He recited her testimony and summarized the information provided by Claimant's daughter on the Third Party Adult Function Report. (Tr. 20, 24). The ALJ discussed the opinions from the state agency consultants, both reviewing and examining. He concluded the opinion of the state agency physician who determined Claimant could perform light work on a regular and continuing basis was "well-supported by the only minimal/nonsignificant coronary artery disease, and the degenerative changes of the lumbar spine and cervical spine with predominately within normal limits physical examinations." (Tr. 24). He determined Claimant would have

additional limitations based upon her complaints to Dr. Shafiq, relating her complaints of episodes of shortness of breath and lightheadedness, to limitations of no climbing of ladders, ropes, and scaffolding, complete avoidance of unprotected heights and dangerous moving machinery, and avoidance of concentrated exposure to dust, smoke, fumes, and poorly ventilated areas. The ALJ further relied upon the mental status examination of consulting psychologist Kathleen A. Ward, Ph.D., finding Claimant was able to understand, remember, and apply simple and detailed, but not complex, instructions and to concentrate and persist for an extended period to complete simple and detailed work tasks with routine supervision. (Tr. 24).

The ALJ recognized Claimant had received some accommodations in the performance of past work. He outlined her testimony in detail on the issue in the decision. (Tr. 20). However, he also noted Claimant made inconsistent statements with regard to her need for accommodations in certain instances, *e.g.*, going into the freezer and lifting heavy boxes. (Tr. 14, 23). He also recited that no treating or examining physician or provider had advised Claimant she could not work, her cardiologist Dr. Bulchandani encouraged a regular exercise program, and Claimant's testimony that she took care of her eight-month old grandchild. (Tr. 23).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis

despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

The ALJ determined Claimant's impairments of coronary artery disease, hypertension, hyperlipidemia, degenerative changes of the lumbar and cervical spines, and unspecified depressive disorder were severe, referenced Claimant's complaints, and discussed the medical evidence. He concluded Claimant had the RFC to perform light work and further limited her to no climbing of ladders, ropes, and scaffolding, must avoid concentrated exposure to dust, smoke, fumes, and poorly ventilated areas, and must avoid unprotected heights and dangerous moving machinery. She could

9

understand, remember, and apply simple and detailed instructions and concentrate and persist for extended periods in order to complete simple and detailed work tasks with routine supervision. The ALJ's RFC assessment was supported by substantial evidence.

### Credibility Determination

Claimant argues the ALJ's evaluation of her credibility is conclusory and not supported by substantial evidence, as the ALJ did not properly link his findings to the evidence in the record or consider the pertinent factors under the regulations.

Deference must be given to an ALJ's evaluation of Claimant's credibility, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's subjective complaints, the ALJ summarized the medical evidence, Claimant's testimony, and reports of symptoms in detail. He made references from the record showing Claimant's complaints were inconsistent with the medical findings and her conservative treatment. The ALJ considered Claimant's activities of daily living and her testimony that she had continued to work for almost the entire time since her alleged onset of disability. (Tr. 20-24). The ALJ's assessment of Claimant's credibility is well-supported by the medical record.

### Step Four Determination – Past Relevant Work

Claimant first contends she has never worked as a food sales clerk, and the VE erroneously testified that she performed the job of food sales clerk and determined it was light work. However, Claimant reported that her work background included a position as a cook/clerk from 2003 to 2006 at a grocery store. She also reported at the time she completed the form, she was currently working as a cook/clerk at a convenience store and had been since December 2011. (Tr. 356). At the hearing, the VE asked Claimant questions about her position at the grocery store. The VE asked Claimant while cooking there, if she worked in the deli and if she sliced meat and waited on customers. Claimant answered, "Yes," that she performed these duties. (Tr. 59). She also testified that she made sandwiches. (Tr. 59). Based upon Claimant's testimony, her report of her past work, and the Dictionary of Occupational

11

Titles ("DOT"), the VE testified Claimant had past relevant work as a sandwich maker, cook helper, and food sales clerk. (Tr. 59-60). The record supports the VE's testimony that Claimant performed work as a food sales clerk.

Claimant also asserts the ALJ improperly considered the accommodations she received in her past work when determining she was able to perform the job of short order cook as she performed it. In his discussion of substantial gainful activity, the ALJ discussed accommodations Claimant reportedly received when performing her past relevant work at a convenience store as a cook/clerk. (Tr. 13-14, 55). However, this was not the past work that the ALJ determined Claimant could perform. The ALJ determined Claimant could perform her past relevant work as a food sales clerk. (Tr. 25).

Claimant further asserts the ALJ improperly performed the second and third phases of the step-four analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). She argues the ALJ made no findings about the functional requirements of her past relevant work, and he relied on the erroneous testimony of the VE to determine that Claimant had the ability to meet the job demands of her past relevant work as a food sales clerk.

Step four of the sequential analysis requires the ALJ evaluate a claimant's RFC, determine the physical and mental demands of a claimant's past relevant work, and then conclude whether a claimant

has the ability to meet the job demands of his past relevant work using the determined RFC. *Winfrey*, 92 F.3d at 1023. The ALJ may rely upon the testimony of the VE when making the determination of the demands of a claimant's past relevant work, but "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id*. at 1025; *see also Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003).

With respect to the second step of the *Winfrey* analysis, the VE listened to Claimant's testimony regarding her past relevant work and even asked Claimant questions regarding her duties. (Tr. 58-59). She described Claimant's past relevant work, relying on the DOT job descriptions, testifying that Claimant had past relevant work as a sandwich maker, cook helper, and food sales clerk, and referred to the applicable DOT numbers, the levels of exertion, and the skill levels of the jobs. (Tr. 59-60). The ALJ presented the VE with a hypothetical question that included the limitations ultimately adopted in the RFC, and the VE testified Claimant could perform her past relevant work as a food sales clerk. (Tr. 60). The ALJ confirmed with the VE that her testimony was consistent with the DOT. (Tr. 61).

The ALJ recited the VE's testimony including the DOT information, exertional levels, and skill levels required for Claimant's past relevant work as a sandwich maker, cook helper,

and food sales clerk. (Tr. 25). He stated that in response to a hypothetical question including Claimant's limitations, "the [VE] testified that an individual with the same age, education, work experience, and [RFC] as the [C]laimant would be able to perform the [C]laimant's past relevant work as a food sales clerk both as actually and generally performed." He noted that "in comparing the [C]laimant's [RFC] with the physical and mental demands of this work, I find that the [C]laimant is able to perform it as actually and generally performed." (Tr. 25). He later noted that he had "determined that the [VE]'s testimony [was] consistent with the information contained in the [DOT]." (Tr. 26).

The ALJ expressly described to the VE Claimant's limitations in a hypothetical question, and the VE responded that Claimant could perform her past relevant work as a food sales clerk. The ALJ cited the VE's testimony with approval to support his findings, and he confirmed that the VE's testimony was consistent with the DOT. The ALJ adequately discharged his responsibilities at step four of the analysis. *See Adcock v. Commissioner of Soc. Sec.*, 748 Fed. Appx. 842, 847-48 (10th Cir. 2018); *see also Doyal*, 331 F.3d at 760-61 (holding that the ALJ did not improperly delegate his step-four duties to the VE where "he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis").

**Development of Vocational Expert Testimony**

Even if the ALJ's step-four analysis is insufficient, if the ALJ's alternative finding at step five is supported by the record, any error at step four is harmless. *See Best-Willie v. Colvin*, 514 Fed. Appx. 728, 738 (10th Cir. 2013) ("[A]ny legal error at step four is harmless in view of the ALJ's alternate finding at step five that other jobs existed in significant numbers in the national economy [the claimant] could perform given her RFC[.]"), citing *Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (affirming step-five finding despite alleged errors at step four). Claimant contends that the hypothetical question posed to the VE did not include all her limitations, so she could not perform the step-five jobs identified by the VE of ticket seller, office helper, and booth cashier.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ.  *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover,

15

Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

There is no error in the ALJ's RFC determination at step five as it relates to the hypothetical questions posed to the VE. The ALJ was not required to include limitations in hypothetical questions to the VE that were not supported by the record. *See Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("The [ALJ] had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied."). As discussed herein, the hypothetical questions to the VE included those limitations found to exist by the ALJ and included in the RFC. (Tr. 19-24, 60-61); *see Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). Based upon these limitations, the VE testified Claimant could perform the representative jobs of ticket seller, office helper, and booth cashier, all of which were found to exist in sufficient numbers in the national economy. (Tr. 25-26, 60-61).

### Remand for Consideration of Properly Appointed ALJ

Claimant contends the case should be remanded because the ALJ who issued the decision was not properly appointed under the

Appointments Clause of the United States Constitution. Claimant concedes she did not raise the issue during the administrative proceedings before the Social Security Administration ("SSA"), but she asserts she was not required to do so, and her challenge therefore remains timely. The Commissioner maintains that by failing to challenge the ALJ's appointment during the SSA administrative proceedings, Claimant has failed to exhaust and waived the issue.

The Tenth Circuit recently decided this identical issue in *Carr v. Commissioner, SSA*, 961 F.3d 1267 (10th Cir. 2020), *petition for cert. filed* (U.S. July 1, 2020) (No. 19-1442). The court determined that the district court had "erroneously relied" upon the United States Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000), wherein the Supreme Court determined that a claimant did not have to exhaust a claim by raising it at the Appeals Council level in order to raise the claim on appeal in the district court, when deciding that exhaustion of the Appointments Clause issue was not required at the administrative level. *Carr*, 961 F.3d at 1271. After finding that *Sims* did not apply, the Tenth Circuit determined that institutional interests supported application of the exhaustion rule to an Appointments Clause challenge, and it could find no exception to applying the exhaustion requirement. *Id*. at 1273-75. The court held that "[t]he district court failed to provide adequate reasons to depart from

17

the general principle that 'an issue must have been raised before an agency for a party to seek judicial review of agency action on that issue.'" *Id*. at 1276, quoting *N.M. Health Connections v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1138, 1165 n.25 (10th Cir. 2019).

Claimant concedes she did not raise the Appointments Clause challenge at the administrative level. Accordingly, based upon the Tenth Circuit's decision in *Carr*, Claimant has failed to exhaust the issue and has therefore waived her Appointments Clause challenge in this matter.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 17th day of August, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE